J-S76031-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GARY SCALZITTI, ATTORNEY IN FACT FOR DONNA STRONG, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| NORTHWEST SAVINGS BANK, | |
| Appellee | No. 1061 WDA 2014 |

Appeal from the Order Entered June 26, 2014
In the Court of Common Pleas of Erie County
Civil Division at No(s): 13571-2013

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA AND OLSON, JJ.

MEMORANDUM BY OLSON, J.:                **FILED FEBRUARY 24, 2015**

Appellant, Gary Scalzitti in his capacity as attorney-in-fact for Donna Strong,[1] appeals from the order entered on June 26, 2014 in the Civil Division of the Court of Common Pleas of Erie County that sustained the preliminary objections filed by Northwest Savings Bank ("Northwest").  We affirm.

On or around October 17, 2007, Daniel D. Strong, David J. Strong, and Donna L. Strong entered into a promissory note with Northwest under which the Strongs obtained a loan in the principal amount of $150,000.00 (the "October 2007 loan").  Thereafter, on or about June 12, 2008, the Strongs

---

[1] Appellant became the attorney-in-fact for Donna Strong under a power of attorney executed on September 13, 2013.

executed a second promissory note with Northwest whereby they obtained a loan in the principal amount of $35,000.00 (the "June 2008 loan"). The Strongs failed to make payments when due under the October 2007 and June 2008 loans and, on September 14, 2012, Northwest confessed judgment against the Strongs pursuant to the terms of both loan agreements. As a result, Northwest obtained judgments against the Strongs for $162,012.20 on the October 2007 loan and $35,541.14 on the June 2008 loan. None of the Strongs petitioned to open or strike these adverse judgments and, to date, Northwest has not executed on its judgments.

Notwithstanding the entry of the confessed judgments in favor of Northwest, the Strongs continued to make payments to the bank. Donna Strong, through counsel for Appellant, requested that Northwest provide her with copies of the operative loan documents and an accounting of payments received on each of the obligations. Under cover of a letter dated December 17, 2013, counsel for Northwest forwarded copies of the account histories for the October 2007 loan and the June 2008 loan. These account histories showed remittances for each loan, including payments made after Northwest confessed judgment against the Strongs. In particular, the account history for the October 2007 loan showed that Northwest received five payments totaling $18,396.74 after judgment had been entered. Additionally, the account summary for the June 2008 loan reflected that Northwest received six payments totaling $2,110.78 after the bank confessed judgment against the Strongs.

On December 16, 2013, Appellant, on behalf of Ms. Strong, filed a civil complaint against Northwest seeking a declaration of rights and requesting an accounting.[2] The complaint alleged that Ms. Strong, through her representatives, asked Northwest for "copies of the operative [loan] documents and an accounting of payments it has received on each of the obligations." Appellant's Complaint (reissued), 2/14/14, at ¶ 5. The complaint also alleged that Northwest "refused to give an accounting of the date and amounts of payments made and the application of payments to [the October 2007 and June 2008 loans]." *Id.* at ¶ 7. Ms. Strong requested this information because she "believe[d] … that [her] money [had been] applied to obligations of her son and her husband for which she [was] not liable." *Id.* at ¶ 6. Appellant's complaint also alleged that Northwest had "improperly appl[ied] Donna Strong's money, received as the result of rents from property jointly owned with her husband and son, to obligations for

_____

[2] Despite Appellant's prayers for relief, he did not attach copies of the loan agreements to the complaint, allegedly because he could not determine "which [n]otes are operative, which [a]greements are operative and that is the reason for filing this suit." Appellant's Complaint (reissued), 2/14/14, at ¶ 4. Notwithstanding Appellant's contention, neither the complaint, nor our review of the certified record, reveals the existence of any loan agreements between Ms. Strong and Northwest apart from the October 2007 and June 2008 loan obligations.

which she [was] not liable, in violation of the various agreements between Donna Strong and [Northwest]." *Id.* at ¶ 8.[3]

Northwest filed preliminary objections to Appellant's complaint on March 11, 2014, raising two challenges to Appellant's complaint. First, Northwest argued that Appellant failed to state a cognizable claim upon which relief could be granted. Northwest also alleged that Appellant had a full, complete, and adequate non-statutory remedy at law within the context of a separate litigation against Ms. Strong's son that sought an accounting and appointment of a receiver for certain jointly held property. Northwest argued that Appellant could issue a subpoena to Northwest for the requested documents and sworn testimony in that litigation.

The trial court sustained Northwest's preliminary objections on June 26, 2014, concluding that Appellant's complaint failed to assert a cognizable claim for relief and that the information it sought was available through other means. Trial Court Order, 6/26/14. In a subsequent memorandum, the court explained that Appellant failed to assert a cognizable claim since Northwest had reduced the October 2007 and June 2008 loans to judgment and since the bank had disclosed the requested information by producing loan histories for both obligations. This appeal followed.

_____

[3] Appellant's complaint does not identify which agreement Northwest is alleged to have violated, nor does the complaint set forth breach of contract as a theory of relief.

Appellant's brief raises five issues for our review:

Whether the [trial] court should have held oral argument on [Northwest's] [p]reliminary [o]bjections [in so far as] Pa.R.C.P. 211, [] provides, in pertinent part[,] "Any party, or the party's attorney, shall have the right to argue any [m]otion and the [c]ourt shall have the right to require oral argument[?]"

Whether [Appellant's c]omplaint should have been dismissed with prejudice without leave to amend without any explanation of how the cause of action is deficient[?]

Whether [Appellant] is entitled to an explanation of the manner in which [Northwest] calculates balances on obligations due it[?]

Whether [Appellant] may maintain an independent action against [Northwest] to determine the balance remaining on the judgments in favor of [Northwest] where payments on the judgments have been made since their entry[?]

Whether [Appellant] should have been allowed to take the deposition of a representative of [Northwest] in order to gain an explanation of the interpretation of the proprietary documents attached by [Northwest] to its [p]reliminary [o]bjections[?]

Appellant's Brief at 4.

We begin our discussion of the contentions raised in this appeal by first reviewing Appellant's procedural claim that the trial court erred in sustaining Northwest's preliminary objections without permitting oral argument by the parties. We next address Appellant's four remaining claims, which we confront collectively given their interrelated nature.

Appellant asserts that the trial court erred in sustaining Northwest's preliminary objections without oral argument in violation of Pa.R.C.P. 211. Specifically, Appellant argues that Rule 211 required the trial court to hear

oral argument upon request. Appellant further claims that the court's failure to convene oral argument on Northwest's preliminary objections led it to misapprehend the facts of this case. We disagree.

In relevant part, Rule 211 provides:

**Rule 211. Oral Arguments**

Any party or the party's attorney shall have the right to argue any motion and the court shall have the right to require oral argument. With the approval of the court oral argument may be dispensed with by agreement of the attorneys and the matter submitted to the court either on the papers filed of record, or on such briefs as may be filed by the parties.

Pa.R.C.P. 211.

This Court has previously held that Rule 211 confers only a qualified right to oral argument. In ***Gerace v. Holmes Protection of Phila.***, 516 A.2d 354 (Pa. Super. 1986), *appeal denied*, 527 A.2d 541 (Pa. 1987), we said:

Rule 211 gives every party or his attorney a **qualified** right to make an oral argument on any motion. The court by local rule may regulate the length of time of such arguments. **In a given case the local court may also dispense with oral argument if it so desires and dispose of the case on the record or upon briefs.** The parties may also waive oral argument unless it is required by the court.

***Gerace***, 516 A.2d at 359 (emphasis in original).

In this case, we discern no abuse of discretion in the trial court's decision not to entertain oral argument on Northwest's preliminary objections. The claims alleged in Appellant's complaint were simple and straightforward. The two-page, eight-paragraph complaint requested copies

of Ms. Strong's "operative" loan documents and an accounting of payments received by Northwest. Appellant requested this information on behalf of Ms. Strong because she believed that Northwest improperly applied her money to obligations of her husband and her son for which she was not liable. Northwest's preliminary objections alleged that Appellant was not entitled to a declaration of rights since the bank had previously reduced the October 2007 and June 2008 loans to judgment and because Ms. Strong had never sought to open or strike those judgments. Northwest further alleged that the documents and information Appellant sought in the complaint were available through discovery requests that Ms. Strong could pursue in separate litigation against Daniel Strong. Based upon the parties' submissions, it is abundantly clear that the sole question that confronted the trial court was whether Appellant's complaint stated a cognizable claim for the requested relief, given Northwest's prior judgments and the availability of the discovery process in separate pending litigation between Ms. Strong and Daniel Strong. Thus, we fail to see in this case how oral argument would have enhanced the presentation of claims before the trial court and, therefore, find no prejudice to Appellant.

We turn now to Appellant's substantive challenges to the order sustaining Northwest's preliminary objections. Given the substantially similar nature of these claims, we address them in a single discussion.

Our standard of review in considering a challenge to an order sustaining preliminary objections is well-settled.

> [O]ur standard of review of an order of the trial court overruling or [sustaining] preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Richmond v. McHale*, 35 A.3d 779, 783 (Pa. Super. 2012) (citations omitted).

Issues two through five in Appellant's brief allege that the complaint filed in this matter set forth viable claims seeking an accounting and a declaration of Ms. Strong's rights vis-à-vis Northwest. In support of these contentions, Appellant points out that Northwest accepted payments on the October 2007 and June 2008 loans after judgment was entered. Appellant also claims that the loan histories produced by the bank were incomprehensible and required explanation. At the very least, Appellant maintains, the trial court should have permitted amendment of the complaint to allow Appellant to clarify the issues.

> An equitable accounting is improper where no fiduciary relationship exists between the parties, no fraud or misrepresentation is alleged, the accounts are not mutual or complicated, or the plaintiff possesses an adequate remedy at law. Equitable jurisdiction does not exist simply because the petitioner desires information.

*Rock v. Pyle*, 720 A.2d 137, 142 (Pa. Super. 1998) (citations omitted).

Appellant has not alleged sufficient facts to establish entitlement to an accounting. There are no allegations that demonstrate a fiduciary relationship between Appellant and Northwest since Appellant represents Ms. Strong, a borrower pursuant to an arms-length transaction with a lender. Further, Appellant has not alleged fraud or misrepresentation by Northwest. Moreover, in the present case, the loan transactions appear relatively straightforward and were never administered by Northwest mutually with, or for the benefit of, Ms. Strong. Lastly, Ms. Strong possessed an adequate remedy at law in the form of discovery requests that she could pursue within the context of the litigation against Daniel Strong. Given these circumstances, equity cannot burden Northwest to supply a formal accounting simply because Appellant desires information.[4] Accordingly, Appellant's demand for an equitable accounting in this case is improper.

_____

[4] Any right of Appellant to an accounting based upon alleged payments to Northwest after entry of the confessed judgments would not arise until after a sheriff's sale of the encumbered properties. *See* Pa.R.C.P. 3136 (setting forth scheme for distribution by sheriff of proceeds from sale of real property, including procedures for filing and litigation of exceptions to distribution of proceeds); *see also Landau v. Western Pennsylvania Nat.*
*(Footnote Continued Next Page)*

Appellant's final claim is that Ms. Strong was entitled to a declaration of her rights under the October 2007 and June 2008 loan agreements notwithstanding the fact that Northwest had previously confessed judgment as to those loan transactions. Neither party has cited, and our own efforts have failed to uncover, any Pennsylvania authority for such a novel cause of action. We note, however, that "[a] judgment rendered by a court having jurisdiction of parties and subject matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment, in respect of its validity, verity, or binding effect, by parties or privies, in any collateral action or proceeding." *Mangold v. Neuman*, 91 A.2d 904, 906 (Pa. 1952) (noting that "[i]t is a rule of law of general application that a judgment properly entered is not subject to collateral attack[]"). Appellant summarizes the thrust of the claims alleged in the complaint as follows: "[Appellant] was within [his] rights to file a declaratory judgment action seeking a determination of all amounts owed by [Ms. Strong] to [Northwest]. The entry of the judgment **is not conclusive** since payments have been made subsequent to the entry of judgment." Appellant's Brief at 14 (emphasis added). This contention confirms that the complaint in this

*(Footnote Continued)* ————————

**Bank**, 282 A.2d 335 (Pa. 1971) (where mortgagee had taken possession of subject property and was collecting rent and paying expenses in that capacity, mortgagors were entitled to an accounting but such accounting was not due until the property had been sold at sheriff's sale and distribution of proceeds had been made).

case was a direct challenge to the unreversed, unmodified, and unannulled judgments obtained by Northwest that were never subjected to a conventional method of attack, including a petition to open or strike the judgments. Since those judgments cannot be collaterally challenged in this fashion, the trial court did not err in sustaining Northwest's preliminary objections.

Moreover, under the doctrine of merger of judgments, we further conclude that Northwest's confessed judgments on the October 2007 and June 2008 loan agreements extinguished any rights Appellant or Ms. Strong may have possessed pursuant to those instruments. The Court of Appeals for the Third Circuit aptly summarized relevant Pennsylvania law under the present circumstances:

> Under controlling Pennsylvania law, "[i]t is elementary that judgment settles everything involved in the right to recover, not only all matters that were raised, but those which might have been raised. The cause of action is merged in the judgment which then evidences a new obligation." **Lance v. Mann**, 60 A.2d 35, 36 (Pa. 1948) (citations omitted). The doctrine of merger of judgments thus provides that the terms of a mortgage are merged into a foreclosure judgment and thereafter no longer provide the basis for determining the obligations of the parties. **In re Presque Isle Apartments**, 112 B.R. 744, 747 (Bankr.W.D.Pa. 1990); **see In re Herbert**, 86 B.R. 433, 436 (Bankr.E.D.Pa. 1988) ("The Debtor is, in our view, correct in her assertion that '[t]he mortgage is merged in a judgment entered in a mortgage foreclosure action' in Pennsylvania.") (*quoting* 25 P.L.E. 85 (1960); *citing* **Murray v. Weigle**, 11 A. 781, 782 (Pa. 1888); **Hartman v. Ogborn**, 54 Pa. 120, 122-23 (1867)); **see also In re Roach**, 824 F.2d 1370, 1377 (3$^{\text{d}}$ Cir. 1987) ("In New Jersey, as in many states, the mortgage is merged into the final judgment of foreclosure and the mortgage contract is

extinguished. As a result of this merger, there is no longer a mortgage....") (citations omitted).

***In re Stendardo***, 991 F.2d 1089 (3$^{d}$ Cir. 1993).[5]  Once Northwest entered confessed judgments against Ms. Strong, her rights *vis-a-vis* Northwest were governed by those judgments, not the October 2007 and June 2008 loan agreements.  Hence, the only available avenue for obtaining credit for, or information about, payments forwarded to Northwest after the entry of the judgments is within the context of execution proceedings as discussed ***supra*** at footnote four.

Order affirmed.

President Judge Emeritus Ford Elliott and Judge Panella concur in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  2/24/2015

_____

[5] We are not bound by decisions of the federal courts, but we may rely on them for persuasive authority.  ***McEwing v. Lititz Mut. Ins. Co.***, 77 A.3d 639, 648 n.7 (Pa. Super. 2013).